[Civ. No. 1713. Third Appellate District.—October 22, 1917.]

## MINNIE McCLELLAN et al., Appellants, v. JOHN T. LEWIS, Respondent.

Res Judicata—Judgment in Action for Specific Performance—Community Property—Homestead.—A judgment in an action against a husband and wife for the specific performance of a contract of sale made by the husband, adjudging that the property was community property and not the separate property of the wife, is a bar to a subsequent action by the husband to quiet title to the same property, based upon the fact that after the signing and filing of the findings and judgment in the action for specific performance, but before it was docketed, the wife, with the connivance of the husband, filed a declaration of homestead, claiming the property as her separate estate.

Fraud—Fraudulent Declaration of Homestead.—The facts examined and found sufficient to justify the finding that the filing and recording of a homestead on property on which a contract of sale had been made was illegal, wrongful, and fraudulent.

Contract of Sale of Real Property—Rights of Vendee.—A vendee under contract having paid a part of the purchase price, became the equitable owner, the vendor held the legal title merely in trust for the vendee, and the vendee was in a position to demand the legal title, and had the right to enter into possession.

Husband and Wife—Community Property.—Under section 172 of the Civil Code (prior to the enactment of section 172a), the husband had power to sell the community property the same as if it were his separate property, for an adequate consideration.

Homestead—Void Declaration.—Where a husband made a contract of sale of community property for an adequate consideration and the vendee paid a part of the purchase price, a homestead which the wife, who had knowledge of the contract, attempted afterward to declare on the property, was void.

APPEAL from a judgment of the Superior Court of San Joaquin County. D. M. Young, Judge.

The facts are stated in the opinion of the court.

'A. H. Carpenter, for Appellants.

Max Grimm, and John R. Cronin, for Respondent.

BURNETT, J.—The action is to quiet title. The claim of appellants is grounded upon the consideration that said Minnie McClellan filed a declaration of homestead upon the house and lot in controversy. Defendant relies upon a contract of sale executed by said F. E. McClellan to said Lewis, as the trustee of the Stockton Grove No. 118, United Ancient Order of Druids, and upon a final judgment in favor of said Lewis in a former action between the same parties.

The court found that on April 1, 1913, the defendant Lewis, for and on behalf of said Grove, brought an action, No. 10,741, in said superior court against said F. E. and Minnie McClellan for the conveyance of said property, setting out in his complaint sufficient facts to justify specific performance; that said defendants appeared and filed separate answers denying plaintiff's allegations (except that no denial was made by either of said defendants that the property in controversy was community property); that thereafter the case came on regularly for trial on the twenty-ninth day of May, 1913, both defendants being represented by counsel; that upon the conclusion of the trial the court orally announced judgment for the plaintiff and directed findings to be prepared in the case; that findings were prepared by both parties in said action and presented to the judge of the court, and left with him; that the findings prepared by the plaintiff were signed by the judge on the twenty-eighth day of June, 1913, and on said date judgment in said case was also signed and filed, and was docketed on the thirteenth day of July, 1913; that in and by said judgment it was and is adjudicated that the real property in question herein was the community property of Frank E. and Minnie McClellan; that the contract of sale was entered into as set out in the complaint in said action; that the purchase price agreed upon, $4,250, was a fair and adequate consideration and value of the said property, and said contract was just and reasonable between said Grove and said F. E. McClellan, and that said judgment is conclusive and binding in this action. There is

35 Cal. App.—5

also a finding to the effect that the said Lewis, acting for the said Grove, had made the first payment called for in said contract of sale and had tendered the balance due, and had deposited the same in the bank to the credit of said F. E. McClellan and Minnie McClellan; that the said McClellans appealed from portions of the judgment in said case to the supreme court of the state of California, and that thereafter, to wit, on the second day of March, 1914, the appeal was dismissed by said court; also that the *lis pendens* was filed in the office of the county recorder of the county of San Joaquin. Furthermore, that on the eighteenth day of October, 1913, said F. E. McClellan drew and received from the Commercial Savings Bank of Stockton, California, the sum of $2,750, which had been deposited therein by said Lewis as the representative of the said Grove of Druids to the account and credit of the said McClellan. Furthermore, that said plaintiff Minnie McClellan had full knowledge and notice of the execution of the said contract of sale by said plaintiff, F. E. McClellan, before the institution of said action to enforce the conveyance of said property. As to the declaration of homestead it was found by the court that on the third day of June, 1913, five days after the trial of the case, in which judgment was rendered in favor of said Lewis, and against the plaintiffs herein, the said Minnie McClellan and F. E. McClellan moved on to the property in question, and on the fourth day of June, 1913, said Minnie McClellan executed a declaration of homestead, and on June 30, 1913, two days after the findings and judgment were signed by the judge and filed as a record of the court, said declaration of homestead was recorded in the office of the county recorder of the county of San Joaquin, and that the judgment in said action was entered on the same day that the homestead was recorded.

There are also findings to the effect that said declaration of homestead is null and void and that the act of plaintiffs in taking possession of said premises and the execution and filing and recording of the declaration of homestead were "illegal, wrongful, and fraudulent." There can be no serious question as to the sufficiency of the facts to sustain the material findings of the court, and directing our attention to the judgment rendered in the former action, it is equally plain that it bars any judgment for plaintiffs in the present suit. We think there can be no serious controversy as to the following

proposition—the character of the property and the title and interests of the parties therein were fairly in issue and determined in said action No. 10,741, and therefore said judgment fully determines the material questions that are presented in this action. (Code Civ. Proc., secs. 1908–1912; *Boston* **v.** *Haynes,* 33 Cal. 31.)

The character of the property in controversy, namely, that it was community property, was admitted in the original suit and adjudicated by the court to be such, and therefore became a matter *res adjudicata,* and not subject to be again litigated. (*Jackson* v. *Lodge,* 36 Cal. 28.) It was immaterial that the contract of sale was not signed or acknowledged by Minnie McClellan, since the husband had power to sell the community property the same as if it were his separate property, for an adequate consideration. (Civ. Code, sec. 172; *Tolman* v. *Smith,* 85 Cal. 280, [24 Pac. 743]; *Farrington* v. *McClellan,* 26 Cal. App. 375, [146 Pac. 1051].) The interest which the wife had was a mere expectancy. (*Estate of Moffitt,* 153 Cal. 359, [25 L. R. A. (N. S.) 207, 95 Pac. 653, 1025].) There can be no doubt that said action No. 10,741 and the present action are actions in equity and relate to the same subject matter. (*Gish* v. *Ferrea,* 10 Cal. App. 537, [101 Pac. 27].) It must be plain, therefore, that the judgment therein is conclusive as to the merits of the case before us, nor does it make a particle of difference that said declaration of homestead was filed before said judgment was docketed. The wife knew before she declared the homestead that her husband had sold the property to the Druids for $4,250, being $250 more than the value of the property, according to the testimony. It must be plain upon principles of equity, as well as upon authority, that she could not, by herself or with the connivance of her husband, declare a valid homestead thereon after the same had been sold for a sufficient consideration.

The rights of the Druids, acquired under the contract of sale, are superior to the homestead (*Smith* v. *Bangham,* 156 Cal. 359, [28 L. R. A. (N. S.) 522, 104 Pac. 689]), because such rights related back to the time of the sale of the property. In the Smith case, *supra,* it is said in reference to an option for the purchase of land that it "vests in the grantee the right or privilege of acquiring an interest in the land, and, when accepted, entitles him to call for specific performance. . . . Such right, when exercised, must necessarily re-

late back to the time of giving the option, so as to cut off intervening rights acquired with knowledge of the existence of the option. A subsequent purchaser with notice of a valid and irrevocable option would certainly take subject to the right of the option holder to complete his purchase, and we see no reason why the declarant of a homestead should stand in any better position. A declaration of homestead creates no new or additional title. It attaches certain privileges and immunities to such title as may at the time be held.'' (See, also, *Copple* v. *Aigeltinger*, 167 Cal. 706, [104 Pac. 1073].)

Stating the case a little differently, there can be no question that under the terms of the said contract of sale of December 19, 1912, F. E. McClellan having sold the property to the Druids for an adequate and sufficient consideration, they acquired an equitable title to said property, and they thereby became the equitable owners, and the vendor held the legal title merely in trust for said vendees. (*Baldwin* v. *Morgan*, 50 Cal. 585; *Gilbert* v. *Sleeper*, 71 Cal. 290, [12 Pac. 172].) The Druids were therefore entitled to the possession of the property on February 1, 1913, which was well known to Mrs. McClellan. She was therefore a wrongful possessor of said property when she filed said declaration of homestead, and the homestead right could not thereby be acquired. (*Mann* v. *Rogers*, 35 Cal. 316.)

Indeed, it is quite apparent from the record that to give effect to said declaration of homestead and to decree that plaintiffs are entitled to judgment would be to tolerate and encourage a fraudulent transaction, and to make of the homestead law a cloak for wrongdoing. No one, of course, would contend for such a construction of this beneficent provision. (*Shinn* v. *MacPherson*, 58 Cal. 598.)

The situation, then, in a few words, is as follows: The husband made a contract of sale of the property for an adequate consideration. The court, having jurisdiction after trial had in which both parties herein were defendants and appeared in the cause, found said property to be community estate. This finding was a final determination of the character of said property, and could not thereafter be controverted by either of said defendants, who are plaintiff's herein. The vendee under said contract of sale paid a part of the purchase price, and at the time specified tendered the balance due. In fact, the vendee complied with all the terms

of said contract, was clothed with the equitable title, and was in a position to demand the legal title to said property, and had, therefore, the right to enter into possession of it. After the foregoing situation had developed, plaintiff Minnie Mc-Clellan, with knowledge of said sale, attempted to file upon said property a declaration of homestead, claiming it as her separate estate. The foregoing statement inevitably demands the conclusion that her attempt thus to defeat the claim and interest of the vendee in and to said property can find no support either in law. or in equity.

It is apparent from what has gone before that plaintiffs and appellants appear before the court in an unenviable light. Having sold the property for a full and adequate consideration, plaintiffs refused to make a proper and legal conveyance, compelled the purchaser to resort to legal proceedings to enforce the contract, and upon being defeated in court, appellants attempted to cloud the title of the property and encumber it with a homestead. More than that, after defeating, as they supposed, the just and equitable rights of the purchaser, appellant, McClellan, drew out the balance of the purchase price for the property, which had been deposited in the bank to the account and credit of plaintiffs, and they thereupon commenced an action, averring that they are the owners in fee thereof. In other words, they want both the money and the property. It seems somewhat incredible that such claim should be. made in a court of justice. In fact, about the most astonishing thing in connection with this whole matter is that the appeal should ever have been taken from the conclusion of the lower court.

Some minor considerations are advanced by appellants, but they are sufficiently answered by respondent, and they do not demand specific notice.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 20, 1917.