[L. A. No. 20744. In Bank. Jan. 21, 1949.]

TELEFILM, INC. (a Corporation), Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Lewinson & Armstrong and Joseph L. Lewinson for Petitioner.

Harold W. Kennedy, County Counsel, Douglas DeCoster, Deputy County Counsel, Freston & Files and Eugene D. Williams for Respondents.

SPENCE, J.—This is a proceeding in mandamus to compel the Superior Court of Los Angeles County and the clerk thereof to issue an execution in enforcement of a judgment and to expunge from the records of the court an order granting a new trial. In seeking such relief, petitioner attacks the validity of the new trial proceedings and claims that the order in determination thereof was void as an act in excess of the court's jurisdiction, with the result that the judgment theretofore entered remained in full force and effect. Upon such premise petitioner maintains that its demand upon the clerk of the court for issuance of a writ of execution was improperly refused, and in such case "mandamus is the appropriate remedy to enforce the performance of that duty."

(*Kahn* v. *Smith,* 23 Cal.2d 12, 14 [142 P.2d 13], and cases there cited.) But petitioner's contest of the propriety of the order in question upon jurisdictional grounds is not tenable, and it cannot prevail in this proceeding.

Petitioner's position rests on the following chronology of events: In a damage action entitled *"Telefilm, Inc., a Corporation,* Plaintiff, v. *Harry M. Warner, and others,* Defendants," which was tried with a jury before Honorable Roy V. Rhodes of the Superior Court of Los Angeles County, a verdict was returned in plaintiff's favor for $300,000. Judgment was entered accordingly on December 11, 1947, and notice of the entry thereof was subsequently served and filed. On December 24, 1947, defendants timely served and filed their joint notice of intention to move for a new trial. On January 10, 1948, Judge Rhodes died. Two days later notice of the hearing of the motion for a new trial was given, and thereafter such motion was assigned to the Honorable Charles S. Burnell, a judge of the same court, for disposition. Meanwhile and on January 23, 1948, plaintiff filed objections to the jurisdiction of the court or any judge thereof—in view of the death of Judge Rhodes, who had tried the case—to "hear and determine" the pending motion. On January 27, 1948, plaintiff's objections were considered and overruled, the motion was thereafter argued on two successive days and then submitted for decision, and on February 5, 1948, the following minute order was made by Judge Burnell: "Motion for new trial granted on following grounds: (1) Insufficiency of the evidence to justify the verdict; (2) The verdict is against law; (3) Errors of law occurring at the trial, etc."

On March 30, 1948, plaintiff, consistent with its aforestated jurisdictional objections to the new trial proceedings and the validity thereof, made a demand upon the clerk of the court that he issue forthwith a writ of execution in pursuance of the judgment, but he refused to do so. Thereupon plaintiff instituted the present proceeding in mandamus for relief. Respondents superior court, Judge Burnell, the clerk of the court, and the defendants in plaintiff's damage action have filed a joint demurrer and answer, but it is unnecessary to detail their pleading since the above chronology of facts material to petitioner's position insofar as it is properly reviewable in this proceeding does not appear to be in dispute. Petitioner is not entitled as a matter of law to the relief here sought.

292

■ Section 661 of the Code of Civil Procedure provides, so far as here pertinent, as follows: "The motion for a new trial shall be heard and determined by the judge who presided at the trial; provided, however, that in case of the *inability* of such judge or if at the time noticed for hearing thereon he is *absent* from the county where the trial was had, the same shall be heard and determined by any other judge of the same court.". (Emphasis added.) Petitioner contends that the italicized words as "used in sequence" envisage application to a living person and do not include the concept of death of the trial judge as reason for another judge to act on the motion. Petitioner also emphasizes the statute's reference to the "inability of *such* [trial] judge" as connoting a living judge and argues that when a judge dies, he is no longer a public officer—a vacancy exists in the official position that he held while living (Gov. Code, § 1770)—and after so ceasing to be a judge, he would no longer answer that description as contemplated by the statute. The same reasoning would apply, of course, to a "former judge" who, because his term of appointment or election has expired, would thereby be excluded from the scope of the statute.

But such restricted view of the statute's wording appears to be contrary to its purport and intent to provide a comprehensive and adequate basis for the disposition of new trial proceedings. The word "inability" is thus defined: "Quality or state of being *unable*; lack of ability; want of sufficient power, strength, resources, or capacity." (Emphasis added; Webster's New International Dictionary [1948 ed.], p. 1254.) Such all-inclusive choice of terminology evidences the statutory design to encompass thereby a variety of contingencies which would permit litigants to pursue their right to seek a new trial though the trial judge be "unable" to act with regard thereto—whether the cause of his inability be death or the happening of an equally significant event in life affecting his continued performance of his judicial duties, such as expiration of his term of office, resignation or retirement from service, disqualification, as well as some physical or mental disorder. Consistent with such apparently intended coverage, the statute's reference to "inability of *such judge*" would seem to be a means for identification of the person "who presided at the trial" rather than a specification for his continued status as a trial judge at the operative time of the statute—when the motion for a new trial is noticed for hearing. (Cf., *Warner Bros. Pictures* v. *Brodel,* 31 Cal.2d

766, 770 [192 P.2d 949].) It is true that the word "inability" was not regarded as including the trial judge's "absence" from the jurisdiction because such consideration was expressly added in the section's amendment in 1931. (Stats. 1931, ch. 768, p. 1608.) But such additional ground for another judge to act in disposition of the new trial proceedings does not indicate the Legislature's intent to limit thereby the prevailing scope of the terminology of the statute as it had theretofore existed. So pertinent in this connection is the observation in *Francis* v. *Superior Court,* 3 Cal.2d 19 [43 P.2d 300], where in discussing the "general requirement" of the statute that a "motion for a new trial shall be heard and determined by the judge who presided at the trial," this court noted the "proviso or exception" thereto "in case the judge who presided at the trial is absent from that county where the trial was had, or is *otherwise unavailable* for the purpose of hearing the motion." (P. 27; emphasis added.) Manifestly a judge who has died is not only "unable" to act but likewise is "absent from the county" insofar as the statute contemplates his presence in court to determine litigation—in short, he is "unavailable" on both grounds for the new trial proceedings.

Petitioner likens the definitions of the words "inability" and "disability" as both referring to "living persons" and upon such premise of similarity in connotation, cites cases where statutes containing the phrase "death or other disability" have been evaluated in the light of their association of terms—"noscitur a sociis." Thus petitioner refers to *Laumann* v. *Conner,* 12 Cal.App.2d 631, 634 [55 P.2d 1225], where the term "disability" in the phrase appearing in the statute there construed was said to mean "a disability, short of death . . . of a physical or mental character," thereby emphasizing the contraposition of the opposing concepts of life and death. (See, also, *Ulmer* v. *United States,* 266 F. 176, 180-181.) But there is no such grouping of words in the statute here involved to indicate a like limited meaning when the one comprehensive word "inability" is singly and independently used. The same observation prevails in derogation of the force of petitioner's listing of constitutional and statutory provisions where the distinction between "death" and "inability" (Const., art. V, § 16) or "disability" (Code Civ. Proc., § 953e) or "incapacity" (Prob. Code, § 512; Civ. Code, §§ 1934, 2355) is expressly made—here, on the contrary, the all-inclusive term "inability" is employed to convey

the statute's intent to provide a broad base for another judge's performance of the trial judge's duties when the latter is "unable" under the prevailing circumstances. Nor does it avail petitioner to cite several cases involving insurance policies, wherein the courts, in differentiating between "death" and "disability" as the terms would ordinarily be used by the parties in such contractual negotiations, have held that "disability" is not included in "death" and that a dead person is not deemed to be "disabled." (*Hill* v. *Travelers' Ins. Co.*, 146 Iowa 133 [124 N.W. 898, 28 L.R.A.N.S. 742]; *Ferguson* v. *Penn Mut. Life Ins. Co.*, 305 Ill.App. 537 [27 N.E.2d 548, 550]; *Hinkley* v. *Penn Mut. Life Ins. Co.*, 37 F. Supp. 1018, 1023.) Necessarily there in such distinct field of litigation relating to proof of loss under "life" insurance claims, "disability" would presuppose "life" and "death" would be the "antithesis" thereof in determining the propriety of "disability" payments after the insured has died— but such analyses of the parties' respective rights commensurate with their private agreements have no significance here in relation to the interpretation of the wording of a statute resting on entirely different legal principles and concerning subject matter in nowise comparable in concept. Obviously such cases have no bearing upon the present problem of statutory construction.

▋ Of course, there can be no question as to the established rule in this state that the authority to seek, and the power of the court to grant, a new trial is statutory, and proceedings therefor must be strictly pursued in the manner provided by law in order that litigants may not lose their rights. (*California Imp. Co.* v. *Baroteau*, 116 Cal. 136, 138 [47 P. 1018]; *Diamond* v. *Superior Court*, 189 Cal. 732, 736-737 [210 P. 36]; *Smith* v. *Ibos*, 22 Cal.App.2d 551, 553 [71 P.2d 847].) But such rule does not require the assignment of a restricted and narrow meaning to the wording in question contrary to a fair interpretation of the statute and the purpose of its enactment in providing "a wise procedure for the disposition of" new trial proceedings. (*Pappadatos* v. *Superior Court*, 209 Cal. 334, 335 [287 P. 342].) So in *Francis* v. *Superior Court, supra,* 3 Cal.2d 19, the advantage of having a motion for a new trial heard and determined by "the judge who presided at the trial, if . . . available," since he "is best qualified to rule" thereon because "familiar with the facts and law of the case," is fully discussed and declared to be "the very essence of" the statute. (Pp. 28-29.) However, the

statute also contemplates that circumstances may require some "other judge of the same court" to perform the judicial duties of the trial judge because of the latter's "inability" or "absen[ce] from the county," and it accordingly employs language suggestive of such interpretation as will broaden, rather than narrow, the premise for such other judge's exercise of jurisdiction so that litigants will not be precluded from availing themselves of their statutory remedy of seeking a new trial. The maxims of jurisprudence that "interpretation must be reasonable" (Civ. Code, § 3542) and that a statute is to be "liberally construed with a view to effect its objects and to promote justice" (Civ. Code, § 4) are generally applicable and must be given effect. Certainly the statute here in question should not be narrowly approached contrary to its spirit and intent, and construed in such a manner as would make its application impracticable, unfair, or unreasonable. In line with these considerations, the death of Judge Rhodes, the trial judge in this case, was a circumstance within the contemplation of the statute as permitting Judge Burnell, another "judge of the same court," to hear and determine the motion for a new trial here involved, and his order in disposition thereof is not assailable as an act in excess of jurisdiction.

Petitioner further objects to the validity of the order granting a new trial because Judge Burnell "either . . . consider[ed] depositions not in evidence or . . . decid[ed] the motion without sufficient knowledge of the evidence to weigh and consider it." Such argument presents no jurisdictional issue and accordingly has no pertinency in this proceeding. Under section 661 of the Code of Civil Procedure as above construed, Judge Burnell had the power to make the order in determination of the new trial proceedings, and all claims in contest of the propriety of such ruling by reason of his alleged consideration of matters "not in evidence" or reexamination of the record "without sufficient knowledge" thereof involve at most questions of error or abuse of discretion, reviewable only on appeal from said order. (Cf., *Woods* v. *Walker,* 57 Cal.App.2d 968, 972 [136 P.2d 72].)

Petitioner also urges that "by appealing from the judgment, defendants [in the damage action] have elected to treat the order as void" and they "cannot maintain an inconsistent position in this proceeding." Whether such appeal from the judgment is properly classifiable as no more than "precautionary" or presents considerations of timeliness upon procedural grounds (see Rules on Appeal, rule 3(a) (2); *Spencer*

v. *Nelson*, 30 Cal.2d 162, 164 [180 P.2d 886]), it clearly could not constitute any so-called "election" or "waiver," and as a circumstance occurring after entry of the order granting a new trial, it would have no relevancy as a jurisdictional factor in this proceeding.

The alternative writ of mandate heretofore issued is discharged, and the petition for a peremptory writ is denied.

Gibson, C. J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

SHENK, J.—In my opinion the Legislature intended to confine the hearing of a motion for a new trial to the judge who tried the case, with the special exceptions noted. Those exceptions are concerned solely with cases of inability of the incumbent judge to act or of his absence from the county, giving to those expressions their ordinarily accepted meanings. There is no indicated intent on the part of the Legislature to accord the new trial procedure to an aggrieved party in every case. In a case not excepted by the statute the obvious result of a failure to obtain the judge who presided at the trial to hear the motion is a denial of the motion by operation of law. (Code Civ. Proc., § 660.)

Before 1929 there was no statute or rule restricting the hearing on the motion for a new trial to the judge who tried the case. (*Altschul* v. *Doyle*, 48 Cal. 535, 536; *Campbell* v. *Genshlea*, 180 Cal. 213 [180 P. 336].) In that year the Legislature (Stats. 1929, p. 842) enacted section 661 of the Code of Civil Procedure requiring a motion for a new trial to be heard by the judge who presided at the trial except in case of the inability of that judge to act, and in 1931 (Stats. 1931, p. 1608), the contingency of absence of the judge from the county was added as a further exception to the general requirement. The provisions were held to be mandatory in *Francis* v. *Superior Court*, 3 Cal.2d 19, 27 [43 P.2d 300].

It is not the policy of the courts to enlarge express exceptions to a mandatory requirement. The intent of the Legislature seems to be clear, and we are not here concerned with the wisdom of confining exceptions to those expressly enacted.

The right to move for a new trial is statutory and may be pursued only in the manner prescribed by the statute. (*Diamond* v. *Superior Court*, 189 Cal. 732, 736 [210 P. 36] and cases cited.) It must also be taken as unquestionable that the Legislature, in making exceptions to a general provision, in-

tended none other than those expressly stated. It is a cardinal rule of interpretation of statutes that a proviso or exception carved out of the general enactment must be construed strictly, and one who relies on the exception must establish it within the words as well as the reason. (*Johnson* v. *Board of Supervisors,* 208 Cal. 282, 285 [281 P. 57]; *United States* v. *Dickson,* 40 U.S. (15 Pet.) 141 [10 L.Ed. 689].)

If the Legislature in enacting provisos to the general provisions of section 661 of the Code of Civil Procedure had intended to include therein the death of the trial judge, the intention would have been indicated as was done in other instances where death was expressly mentioned. (Code Civ. Proc., § 953e, Stats. 1931, p. 410, death, or other disability; Const., art. V, § 16, impeachment, death, inability, resignation or absence from the state; Prob. Code, § 512, death, disqualification, incapacity; former Code Civ. Proc., § 653, death, removal, disqualification, absence or refusal (replaced by Rules on Appeal, rule 51, 22 Cal.2d 33 "unavailable or unable to act").)

The policy of rigorous adherence to the words of statutory provisos is not confined to this jurisdiction. In *Malony* v. *Adsit,* 175 U.S. 281 [20 S.Ct. 115, 44 L.Ed. 163], a bill of exceptions was allowed and signed by the successor, instead of the judge who tried the case required by statute to authenticate the bill. It was held that the judge who signed the bill was without power in the matter. Rule 63 of the Federal Rules of Civil Procedure (28 U.S.C.A., p. 735) includes the exceptions of death, sickness or other disability. "Disability" as so used was held not to extend to cases of absence. (*Norwood* v. *United States,* 18 F.2d 577.) Incapacity to act does not include voluntary absence from the state. (*In re Munger,* 10 App.Div. 347 [41 N.Y.S. 882].) Resignation of the judge who tried the case does not empower another judge to make findings. (*United States* v. *Nugent,* 100 F.2d 215, 217.)

I am in agreement with the disposition of this matter by the District Court of Appeal of the Second Appellate District, Division Two (194 P.2d 542). The peremptory writ should issue.

Carter, J., concurred.

Petitioner's application for a rehearing was denied February 17, 1949. Shenk, J., and Carter, J., voted for a rehearing.